Case number 19-3045, United States of America v. Manuel de Reynoso, at balance. Mr. Mammon, for the at balance. Mr. Goodham, for the appellate. Good morning, counsel. Mr. Mammon, when you're ready, please proceed. Thank you, your honor. Good morning, your honors, and may it please the court. I am Nathan Mammon, appearing on behalf of Manuel Reynoso. While our briefs identify multiple errors that we submit require a new trial. First, that the district court failed to instruct the jury that it was fine. Reynoso knew he had the status of having been convicted of a crime punishable by more than a year in prison. And second, that the district court erred by allowing a key defense witness, Val Rodriguez, to refuse to provide testimony for Reynoso in violation of Mr. Reynoso's Sixth Amendment right. First, the jury was not instructed- The jury was not instructed that it was fine. Reynoso knew he could not possess a firearm as the Supreme Court held was required in Rehoff v. United States in 2019. Rehoff was decided after Mr. Reynoso's trial, and plain error review applies here. The government does not dispute that the first three prongs of plain error review are met. The only question before the court is whether the court should recognize and grant relief for the error that it affects the fairness of the proceeding. And we submit it does. This case is different in one key respect from nearly all the cases of the government sites where the courts concluded the Rehoff error did not affect the fairness of the trial. Before you get to the difference, all the cases of the government sites, other circuits have decided there did have to be a showing of prejudice essentially, didn't it? Other circuits have held in the published decisions, there's actually right in the time of the reply brief, a second circuit unpublished decision that found that there was similar to these facts, that there was not prejudice or there was no showing that the defendant would have known. But the other cases that are cited in the briefs, the courts of appeals have said that there must be some showing or needs to be some evidence that the defendant will look at the record and see if the defendant should have known that he had been serving or I think convicted of a crime carrying more than a year in prison. But in those cases, I think the key fact from those cases is that in all those cases, except one that I'm aware of, the defendant actually had served multiple years in prison. Here the defendant had been sentenced to two five-year terms, had he not? Two essentially five-year terms, he had been sentenced both, one was suspended entirely, one was suspended to be less than a year, so he served some months in prison. But he was sentenced, he was in court and sentenced to more than a year, it was suspended, but he was in fact sentenced to more than a year, right? He did receive a sentence, a suspended sentence, but sentenced to more than a year. But we don't have in this case, which also happens in other cases, that where there's evidence of what was said at the plea colloquy, what was required before the court, the state courts, could accept the guilty plea. We know that a judgment was entered of more than a year sentence, right? We do know that a judgment was entered of more than a year, but again, part of the sentence or the majority of the sentence was suspended. Thank you. But we don't know what was told to Mr. Ornoso, what he was instructed as far as accepting the guilty plea, that he understood the ramifications. Again, facts, if the court looks at the other appeals, those are facts that the other courts of appeals found significant in not recognizing the rehab error, the plain error of rehab. And so we've submitted on this record where we don't know, we know that he didn't serve more than a year in prison. We don't have any evidence from any plea colloquies, any other statements on the record indicate that Mr. Ornoso knew he had been convicted of a crime that carried a sentence more than a year, when he practically had not spent a year in jail, that the record, this record does not conclusively show that he knew his status was such that he could not have invested the firearm. So can I ask you a question about this? I know you have your other issue you want to talk about too, but on this one, you framed it in part as a plain error question along the lines of what you just articulated. And then you also have a and on the sufficiency claim, it just seems a little bit odd to be talking about sufficiency when we're talking about an element that wasn't instructed to begin with, because nobody even knew that it was an element at the time. At least nobody involved in this case knew it was an element at the time. And so the Ninth Circuit has a decision that indicates that we don't think of that issue as a sufficiency issue because we base sufficiency analysis on the elements that were in evidence for which to find that the element was met. Here, you just can't even do that because nobody understood that Rahafe was going to come down and require a finding by the jury of knowledge of felon status. I understand. I agree. And I think the sufficiency point ties in with the rehash error point of that there was no evidence. If you look at the jury, if the court is constrained by what was the jury record, the trial record. So I know courts of appeals have for the most part concluded you could look beyond the record before the jury. But if you're constrained by what the record before the jury in determining whether you could conclude that he would have known of his status, that record, it's part of the plain error analysis as well, that there's insufficient evidence to conclude on that I take your point that you would have a stronger argument if you're bound by the record that was submitted as opposed to whether you could look beyond the record. And let's just suppose, I know you disagree with this, but let's suppose for plain error purposes, we think you can look beyond the record and you can look to what the facts are in the world. And then for plain error purposes, that means you take into account some things that the jury wasn't confronted with. But for sufficiency purposes, you still can do that. And then so then you'd have your sufficiency claim, but in theory, but in fact, the sufficiency analysis seems like a mismatch here when you don't have a jury instructed on the element to begin with. Then it seems like you're back to plain error and you have your arguments on plain error. I'm not suggesting that you necessarily win or lose on those. I'm just wondering whether there's in fact a freestanding sufficiency claim that would give you the certainty of limiting things to the record presented to the jury, when here we're not even really talking about the normal sufficiency rubric because the element was just never given to the jury. I think they do dovetail together at some point and it comes down to the sufficiency, to my point, the sufficiency claim, if the court is constrained by the record before the jury, I don't know if it matters whether it's under plain error review or sufficiency, but it's an added sort of wrinkle on that question of what the record, whether the there was evidence beyond a reasonable doubt, based on the evidence before the jury, that he knew of. Got it. So the way it sounds like the way you're conceiving the sufficiency claim is it's piggybacking on the plain error claim, assuming that for plain error purposes, you're constrained to the record that was presented to the jury. Yeah, sure. Much better way of phrasing it. Thank you. Thank you for that clarification. If I can just say one quick minute on the Sixth Amendment issue, there was a witness, Val Rodriguez, who was undisputedly the key witness in this case, because I don't think there was any dispute that it was his gun, that he placed it in the car, and that he didn't tell Mr. Reynoso that he placed it in the car. What do you see as the effect of the stipulation below as to what the testimony would have been from Rodriguez? Well, the effect of the stipulation is Mr. Reynoso... Has this error, if any, been waived or forfeited by that? No, Your Honor. I don't believe that there has been waived or forfeited because Mr. Reynoso made clear multiple times that he intended to call. He subpoenaed Mr. Rodriguez, the district court, and made clear that he was pressuring or encouraging that the parties to reach a stipulation. And the key parts come at page 708, 709, 710 of the joint appendix, where the district court said, look, I think he's clearly going to assert the Fifth. I think he has Fifth Amendment issues with Mr. Rodriguez, Fifth Amendment issues with respect to cross-examination questions, and then posed it as, well, maybe you could get this evidence in through hearsay exception, through testimony of a law enforcement officer. At that point, Mr. Reynoso's trial counsel is left with really no choice. I guess he could put all his eggs in the appellate basket and say, no, I want to call him, and the district court can refuse and conclude that Rodriguez can assert his privilege, or he can accept the half loaf that he was offered at that time to stipulating to this testimony. And so I also believe that in the context of how this came about, Mr. Reynoso certainly didn't say he was waiving his rights to challenge this issue. And in the context of how this came about, I don't believe that it clearly indicates that he had an on that issue. There is this point at 7-20, the joint appendix, where the witness's counsel said, I just want to confirm with the court that it's all right for the witness to be excused and for me to be excused at this point. And your client's counsel said, it's fine with the defense, Your Honor. At that point, doesn't it seem like the defense counsel is saying that now that we have the stipulation, I'm fine with the defense, as the counsel put it, for the witness to be excused? Certainly, it would be nice if we could have a clear objection on this point. But I think, again, if the court looks at the context of how this came about, by that time, it was understood that Rodriguez would take the stand, assert his Fifth Amendment privilege. They'd agreed to a stipulation that would cover what the law enforcement officers would relay. And at that point, as Mr. Ernesto's trial counsel said, look, I don't have any, you know, there's no purpose of bringing him to stand just to assert the right. Except that he might have been able to have, if he asserted the right, then there would have been a hearsay, an argument for admissible argument. That certainly was a discussion throughout. The government opposed that and said that. Now, you were not trial counsel, right? I was not trial counsel. Thank you, Your Honors. If no further questions, we'd ask that the court vacate and remand for a new trial. Thank you. We'll give you a time for rebuttal that you requested, too, Mr. Mammon. Thank you. We'll hear from the government now. Mr. Goodhand. Thank you, Your Honors. May it please the court, David Goodhand for the United States. Taking the issues raised by the defendant in reverse order, turning first to the Fifth Amendment claim. The government believes the record demonstrates a waiver here. This was a knowing waiver. It was a voluntary waiver. Turning first to the question of voluntary, I know my opponent has suggested the district court insisted that he accept the stipulation. The record bespeaks the opposite. The district court twice asked, emphasis on asked, if the parties had talked about a stipulation. The defendant twice indicated he would be, quote, glad to, close quote, to consider a stipulation. And then the defendant even set the terms of the stipulation by articulating the material facts that he wanted in the stipulation. And then this is at JA 710, excuse me, said as long as we are able to get that information before the jury, we would be fine. And then the court adjourned the proceedings so the parties could discuss this. The parties came back and the defendant declared we do have an agreement in principle about a stipulation. That's at JA 717. So that's sort of the voluntary prong of waiver. The knowing prong that I know, again, my opponent has suggested was missing here. I think he has phrased it as the stipulation wasn't necessarily conditioned on a waiver of testimony. And again, the government would submit that the record bespeaks the opposite. In particular, at JA 708, the court asked, have you conferred, this is a quote, have you conferred about a stipulation as opposed to testimony, close quote. The court also asked, in order to avoid the appellate issue, have you conferred about a stipulation? Those are both at JA 708. So to the extent that there's knowledge about both I am taking the stipulation in lieu of testimony, that's answered by the JA 708 site. There's also even an indication that the defendant should have understood that he couldn't be doing what he's doing now, which is raising a series of claims relating to decisions and inquiries that the district court never had to make because of the stipulation. That is, to avoid the appellate issue, the court said, have you talked about a stipulation? And the court suggests, look, we don't lightly invoke waiver. We understand that means that court, that cuts off this court's consideration of the error as opposed to a forfeited claim. So we don't lightly go down this road, but I would suggest this is a good case for adhering to the waiver and enforcing it because the defendant, by all accounts, Mr. Rodriguez was actually in the courthouse. He was apparently in the hallway and the defendant never pursued whether or not he was indeed invoking. He never pursued a question by question inquiry about the scope of the privilege that assuming it was invoked. He never asked the court to do the waiver analysis once that had been discussed. And finally, he never, of course, asked the court to So again, what we have here is this is why you have waiver. The defendant struck a pretty good bargain with the government. The government gave up its cross-examination rights. He got in the statements of Rodriguez and he put them before the jury in his closing argument. So in that respect, we think this is a good vehicle for enforcing the waiver that we have here, which was both knowing and voluntary. There's nothing, before you go to the second issue, just one question on this. There's nothing conceptually implausible about both taking the stipulation and also continuing to want the witness to testify. I mean, in theory, a defense counsel could certainly do that. They could say, look, I get it. I mean, it sounds to me like I may not get this testimony. So sure, I'll take the stipulation because that's all I can get. But I just want to make sure that everybody understands, I'd rather have the witness. I think that's, I don't disagree with that for one moment. But what we have here is not that caveat. What we have here is the district court saying we could resolve this with a stipulation as opposed to testimony and the defendant agreeing to that. And at the site that was raised when my opponent was at the podium, the defendant actually agreed to release the witness. So I don't disagree with the notion there's not an internal conflict there. But on this record, what we have is a fairly significant, robust waiver. Okay. Turning to the Rahafe issue, a couple of things first, before I get into my argument. I would note that in the reply brief, the defendant has cited on several occasions the Fourth Circuit's decision in Medley. I just wanted to make sure that the court understood that on November 12th, the Fourth Circuit vacated that decision. And they are now granted en banc review of the Medley decision. So a lot of the arguments relating to Rahafe in the context of, you know, what kind of error was this? What prong of Olano do you access? The only authority that he has for a lot of these arguments is now, rests on a vacated Fourth Circuit opinion. Number one. Number two, as to the instructional error, certainly it's the defendant's burden to demonstrate that this, by not recognizing the error, this would undermine the integrity and the public reputation of the judicial proceedings. As numerous courts have indicated, quite the opposite would be true if you were to recognize the error in a case like this. Old Chief constrains the government before Rahafe. That is, the government could not put in evidence relating to the depth and the details and the nature of a prior conviction. So the government, of course, held its hand in this case before Rahafe, based on Old Chief. Now, to come back around and suggest, well, the government didn't put into the record the requisite information, well, that would undermine the government's public reputation of proceedings. And of course, this is easily resolved by just simply looking at the PSR here, where the defendant, three months before he was stopped on 17th Street, pled guilty to being a felon in possession in Maryland State Court. So the suggestion that there's somehow a miscarriage of justice because he didn't understand his status, I would suggest, is belied by both the prior plea to being a felon in possession, coupled with, of course, in 2011, he was sentenced to two five-year terms. I don't have any further- I have a question for you on this, which is related to the question I asked Mr. Mamet. So the opening brief frames kind of a related sufficiency challenge on this score, and the government didn't respond by saying that there's no such thing as a sufficiency challenge in this context. And first, I'm wondering why, because it's not clear to me that a sufficiency challenge makes sense where you have a jury that was never instructed on an element. And second, if you think that there is the possibility of a sufficiency challenge, I'm not sure I understand how the evidence could be deemed sufficient here, because there was just no evidence introduced at trial about his knowledge. Turning to your honor's second point first, several courts have been comfortable with the notion that the stipulation alone, if you're in the context of sufficiency, the only question is whether any reasonable juror could conclude that he had knowledge of his status. And at least a couple of courts have concluded that the stipulation itself would permit a reasonable juror to conclude that he had knowledge of his status. That is, he stipulated to the fact that he was indeed someone who had been victim of a crime and been imprisoned by more than one year. I get that, but that would just mean that then Rahafe means nothing, because the whole point of Rahafe, at least in the felon context, I understand that case came up with one of the other disabling statuses, but there's a difference between being a felon and knowing you're a felon. That's the premise of the entire decision. So what the stipulation tells you is that you were a felon. It doesn't tell you that the person knew that they were a felon. Now, I take the point that most people, when they have a felony conviction, we can reliably assume that they know that they have a felony conviction. I understand that, but usually that's proved somehow. There's evidence submitted that at least somebody testifies, or there's something that says, look, and people know they have a felony conviction, right? Yes, but there's got to be some evidence that goes to that point, as opposed to the mere fact of having been a felon. Otherwise, that element, the whole point of Rahafe in the felon context, just goes away. I actually disagree with the court's suggestion to the extent that, again, we're in the sufficiency context. That's the template. Then the question becomes, is this a reasonable inference or is it based purely on speculation? And the question is, and the courts have said this, I'm sorry, I see my time's up. That's all right. You can go. The courts have said it is a reasonable inference from the admission that you are indeed a person who has been convicted of a crime that is a felony. It's a reasonable inference for a jury to conclude from that alone that you would be a person who would know about that. It's an earth shattering notion that you would be a person who So do you think that it's a separate element to show that the defendant knew that he was a felon than that he, in fact, was a felon? Yes. Then in this case, for example, when the stipulation's made about felon status, the jury's given the instruction that the evidence is relevant only to proving that the defendant was unlawfully in possession of a firearm as a person previously convicted of a crime punishable by imprisonment for a term exceeding one year. So the jury specifically told you can only take this stipulation for purposes of felon status. It's not given the option of taking that into account for purposes of the mens rea. Now, at the time, nobody knew that you even cared about that. I understand that. But that seems to go back to the question of whether there's such a thing as a sufficiency challenge in this context. But when the jury specifically told you can't take it into account for any other purpose, I don't know how we can say that it goes to de-analyze this on the back end when Rahave comes down in the interim. And, of course, that instruction, I would note this, however, we also pointed to the evasive conduct that the defendant signaled on the scene. And I understand that. I mean, and there's other evidence that you could, in theory, point to. I mean, it's not the strongest evidence of knowledge of felon status. There's obviously there's much more that directly could have been done. But everybody, I take the point that everybody's operating on a false premise here because nobody knew that you needed evidence. It's not as if the government couldn't come up with something that would have been completely satisfying had they known. It's just that we're operating in this strange world in which nobody even knew that this mattered. And I'll finish with this note. I'm over my time. But that circles back around to the core question that relates to the fourth prong of Olano, which is are you doing a disservice to the public reputation of a judicial proceeding if you do not recognize the error? And I would suggest, as many courts have found, the disservice would be done if you reversed you. Right. For plain error purposes, that might totally take the point. It gets confusing with sufficiency. But I think we've been around that. But we appreciate your arguments. My colleagues don't have any further questions for you. No questions. Thank you. We would ask that you affirm the conviction below. Thank you. Thank you. Mr. Mamman, we'll give you your two minutes of rebuttal that you'd asked for. Thank you, Your Honor. If I could start back with the rehab issue and my colleague on the other side mentioned Maryland offense and using that as further evidence that he would have known as a felony status. First, we don't actually know. And at the time that he was arrested and found with this fireman in his car, he had been guilty but hadn't been sentenced yet in Maryland. There's a paucity of information on what that Maryland offense was about. There's nothing that was put in the record. I've gone back and tried to figure out the offense that you would have pled guilty to and the nature of it. We don't know the plea policy. But I can say, based on my research, that Maryland—again, 922 doesn't require you to be convicted of a felony. 922 says you have to know your status that you've been convicted of a crime carrying a sentence of more than a year of imprisonment. The Maryland offense that I think applies here is one that requires a felony conviction that could be under a state law felony, which can be drug crime. The breadth of it, I guess, is unknown. That it's not coextensive of knowledge, pleading guilty to knowledge that you've been convicted of a felony, which he had in the Virginia state for transfers over to—well, you also knew that you'd been convicted of a crime that carried more than a year in prison when he never served more than a year in prison. So I think that's—I think the Maryland plea was never relied on below, but it also, you know, doesn't get us there as far as proof that Mr. Renoso knew of his status. Regarding the Medley, my colleague points out, yes, the Fourth Circuit is hearing Medley and Bank, I believe, in January. But even on Medley's facts, this case is much, much different. Medley spent 16 years in prison, and so, you know, there's that fact that aligns with all the other circuits which have looked at the length of time that a person actually spends in prison and saying, well, surely they know they were convicted of offense, carried more than a year in prison when they served that. Thank you, Your Honor, for your time. If you have any other questions, I'm happy to answer them, but I see my time has expired. Thank you, counsel. Thank you to both counsel. And Mr. Mammon, you were appointed by the court to assist us in this matter, and the court appreciates your able assistance. Thank you, Your Honor.
judges: Srinivasan, Rao, Sentelle